**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **H&R BLOCK TAX SERVICES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION No. 6:08cv37** |
| | § | |
| **JACKSON HEWITT TAX SERVICE, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## ORDER

Before the Court is Plaintiff H&R Block Tax Services, Inc.'s ("H&R Block") Motion for Leave to Amend Complaint and Docket Control Order ("Motion").  (Doc. No. 31).  Defendant Jackson Hewitt Tax Service, Inc. ("Jackson Hewitt") has filed an Opposition to H&R Block's Motion to Amend the Complaint and Brief in Support ("Opp.") (Doc. No. 39), and Plaintiff has filed a Reply In Support of its Motion for Leave to Amend Complaint and Docket Control Order ("Reply").  (Doc. No. 42).  Having fully considered the parties' arguments, the Court **GRANTS** Plaintiff's Motion for Leave to Amend Complaint and Docket Control Order.

## BACKGROUND

Plaintiff seeks to add a claim of infringement based on U.S. Patent No. 7,127,425 ("the '425 patent"), not previously involved in the instant action.  The '425 patent covers a system for providing a type of loan before the end of the calendar year based on historical tax refund data and year-to-date income or job verification information.  In late 2006, Jackson Hewitt offered a product it called the Holiday Express Loan Program ("HELP"), which is a preseason loan product. In early 2007, Jackson Hewitt publicly withdrew the HELP product from the market.  Though Plaintiff asserts it believed that the HELP program infringed the '425 patent when it filed suit, it

chose not to assert the '425 patent because Defendant had already withdrawn the HELP product from the market.  Defendant recently announced that is will again offer a new preseason loan product.  As a result, Plaintiff seeks leave to amend its Complaint to add a claim for patent infringement against this product based on the '425 patent.[1]

## DISCUSSION

Plaintiff requests leave to amend its Complaint to add a claim for patent infringement based on a previously unasserted patent—the '425 patent—against a product it alleges it just discovered Defendant intends to release.  MOTION at 1.  Plaintiff argues that the request to amend is based on good cause and would allow the Court to preserve the currently scheduled *Markman* hearing and trial dates.  *Id.*

Defendant argues that the instant Motion is not timely because Plaintiff had access to the alleged recently discovered information as early as September 2008, when infringement contentions were due.  OPP. at 4.  Moreover, Defendant argues that although Plaintiff asserts it had reason to believe that the HELP product infringed the '425 patent prior to filing its Complaint, Plaintiff affirmatively chose not to include the HELP product or the '425 patent in the instant litigation when it filed the Complaint in February 2008.  *Id.* at 5.  Defendant argues that if Plaintiff had done so, it "could have then timely included the 2008 Jackson Hewitt pre-season loan product in its original infringement contentions" which were served on September 11, 2008.[2]  *Id.* at 5.  Further, Defendant

---

[1] In its Motion, Plaintiff also sought leave to amend the Docket Control Order ("DCO").  MOTION at 8–9.  However, Plaintiff now asserts that should the Court grant its Motion for leave to amend the Complaint, Plaintiff is willing to work with Defendant on amending the DCO "so long as the schedule preserves the current *Markman* hearing and trial dates."  REPLY at 1.

[2] The DCO also specifically sets out that "Plaintiff shall add new patents" by September 11, 2008, and thereafter "it is necessary to obtain leave of Court to add patents or claims."  DCO at 6.  Whether the instant Motion is framed as a motion for leave to amend Plaintiff's Complaint, as it is here, or a motion for leave to add a new patent the

2

argues that allowing this amendment will prejudice Defendant because it will be forced to "undertake a completely new and distinct prior art search and analysis, at a time after its preliminary invalidity contentions have been served." OPP. at 6.

On June 4, 2008 the Court entered the DCO which provides that a party seeking to amend a pleading must file a motion for leave pursuant to Patent Rule 3-6 if the amendment would affect infringement or invalidity contentions.[3] DCO at 5. Patent Rule 3-6 provides that amendment or supplementation of any party's infringement or invalidity contentions "may be made only by order of the Court, which shall be entered only upon a showing of good cause." PATENT RULE 3-6(b). This standard for amending infringement or invalidity contentions comes directly from Rule 16(b)(4) of the Federal Rules of Civil Procedure, which provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. Pro. 16(b)(4); *see also STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F. Supp. 2d 845, 849 (E.D. Tex. 2004) (Davis, J.) (noting that the Patent Rules regarding amending infringement and invalidity contentions incorporate Rule 16(b)'s good cause requirement).

This standard—good cause—requires Plaintiff to show that deadlines in the DCO could not reasonably have been met despite Plaintiff's diligence. *STMicroelectronics*, 307 F. Supp. 2d at 850. Courts balance the following four elements in determining whether to grant leave in such situations: 1) the explanation for the failure to meet the deadlines; 2) the importance of the thing that would be excluded; 3) the potential prejudice in allowing the thing that would be excluded; and 4) the

---

requisite standard is the same: plaintiff must show "good cause" for leave to amend or add a new patent. FED. R. CIV. PRO. 16(b)(4); PATENT RULE 3-6(b).

[3]The DCO actually cites to Patent Rule 3-7. However this provision, as amended November 19, 2007, relates to willfulness, while Patent Rule 3-6 relates to amending infringement and invalidity contentions.

availability of a continuance to cure such prejudice.  *Id.* (citing *S&W Enters., L.L.C. v. Southtrust Bank of Alabama*, 315 F.3d 533, 535 (5th Cir. 2003)).

In *S&W Enters., L.L.C. v. Southtrust Bank of Alabama*, the Fifth Circuit affirmed the district court's denial of the plaintiff's motion for leave to amend the complaint filed more than three months after the deadline to amend pleadings because the plaintiff failed to offer an "adequate explanation for its delay in seeking leave to amend." 315 F.3d 533, 535 (5th Cir. 2003).  The Court held that the motion was not only untimely, but allowing the amendment would also unduly prejudice the defendant as it would require additional discovery and unnecessarily delay trial.  *Id.*

Here, Plaintiff argues that good cause exists because 1) Plaintiff has a reasonable explanation for failing to meet the deadline; 2) including the '425 patent will help conserve party and judicial resources; 3) Defendant will not be unduly prejudiced by the late addition; and finally, 4) the DCO can be modified to alleviate any minor prejudice resulting from the late addition.  Within the context of the four factors outlined above, the Court will address each of these arguments in turn.

I.       **Plaintiff's Explanation for Failing to Meet the Deadline**

Plaintiff contends that its infringement contentions could not have been amended prior to the September 11, 2008 deadline because details about Defendant's new preseason loan product were only recently released.  REPLY at 1.  Defendant responds that not only was this newly discovered information available in September, but it was provided in the earnings call transcript Plaintiff attached as an exhibit to the instant Motion.  OPP. at 4; *see also* MOTION, EXH. D.  Further, Defendant essentially argues that because Plaintiff chose not to accuse the 2006 HELP product when it initially filed suit, Plaintiff should be excluded from "bootstrapping" a new patent into the instant

4

action based on arguments regarding the relationship of the new preseason loan product to the 2006

HELP product. OPP. at 5.

On September 4, 2008 Defendant held a F1Q09 Earnings Call, where it was disclosed by

Mike Yerington, President and CEO of Defendant Jackson Hewitt, that a "compelling early season

product" would be emphasized as a means to "putting the company back on the path to a successful

2009 tax season." MOTION, EXH. D at 2. Mr. Yerington went on to note that "[o]ur expectation is

to make available an attractive credit product to drive customers into our stores in the early season"

and that "getting out in front of the official electronic filing start to the tax season with a viable

product will allow us to legally compete against pay stub filings that have historically occurred with

the opening of the IRS electronic filing window." *Id.* at 3. Mr. Yerington further went on to indicate

that the new preseason loan product remained a work in progress. *Id.* at 3 ("[g]etting the product

finalized is no simple undertaking"); *id.* ("[t]here's still a lot to accomplish in order for us to deliver

and [sic] early season product but we are on track"); *id.* ("I can't share specific product or launch

details but it remains our intention to make a powerful product impact in the early season."); *id.*

("[w]e are working closely with a new bank partner to put a product in place that will not only be

attractive to our early season customers but will also be economically attractive to our bank

partner"). These vague and indefinite statements constitute the extent of the information disclosed

by the earnings call transcript in September.

Defendant focuses on the assertion that the new preseason loan product will "compete against

pay stub filings" as a basis for arguing that Plaintiff had access to the key details relevant to the

instant Motion in September. REPLY at 4. However, Plaintiff argues that the reference to

competition was insufficient to apprise it of details to make an infringement determination. Plaintiff

5

notes that the '425 patent covers products that issue loans based on an estimated tax refund amount using information such as historical tax refund information and year-to-date income and expense information. *Id.* at 2. Further, Plaintiff argues that products which issue loans based on more traditional methods of evaluation would not infringe. *Id.* Thus, Plaintiff asserts that the mere competition Defendant points to was insufficient as a basis for an allegation of infringement because not all competing products necessarily infringe the '425 patent.

Plaintiff focuses on the fact that the preseason loan product would evaluate information from a customer's "latest paycheck stub" and a "tax planner." MOTION at 6–7; REPLY at 2. Plaintiff contends that the necessary details were disclosed in a voicemail greeting from a regional Jackson Hewitt office. MOTION, EXH. E. Plaintiff attached a transcript of the voicemail greeting to the instant Motion, and in relevant part, the greeting notes that "[s]tarting November 21, you can bring in your latest paycheck stub and apply for a line of credit of $300 or $500 after completing a tax planner." MOTION, EXH. E at 1. Although, as Defendant notes, the transcript lacks a date, Plaintiff indicates in the Motion that it became aware of Defendant's intention to provide the preseason loan product the same week that Plaintiff filed the instant Motion. MOTION at 6. Plaintiff adds that as of the filing of the Motion, Defendant had not published written information regarding the new preseason loan product. MOTION at 6.

Thus, Plaintiff has pointed to specific details disclosed in the voicemail which directly indicate that the new preseason loan product will not issue loans based on traditional methods of evaluation. Instead, Defendant's preseason loan product will issues loans based on information collected from a tax planner and the customer's latest paycheck stub, and it is this specific information that put Plaintiff on notice of the potential infringement of the '425 patent. Because

6

Plaintiff did not discover these significant details until the week Plaintiff filed the instant Motion, Plaintiff's explanation for failing to meet the deadline is both timely and reasonable.

## II.    Importance of Adding the '425 Patent

Plaintiff argues that adding the '425 patent will conserve party and judicial resources because there is factual overlap between the claims. MOTION at 8.  Plaintiff points to the fact that 1) the previously asserted patents have the same named inventor as the '425 patent; 2) loan proceeds will be provided by Defendant with the ipower CashCard accused of infringing in the original Complaint; and 3) consolidation will conserve resources.  *Id.*

Defendant responds that the '425 patent is unrelated to the patents-in-suit and therefore will require new discovery and prior art analysis. OPP. at 2.  Defendant further argues that "according to statements made by Plaintiff in its motion, it could have included the '425 [p]atent in the original complaint."  *Id.*  Defendant notes that "Plaintiff admits that it affirmatively chose not to include the '425 patent and the allegedly infringing 2006 product when it filed this action ten months ago" and "[i]nstead, Plaintiff waited nearly a year to use this 2006 product as a means to bootstrap this unrelated patent into the case after extensive discovery has occurred and infringement and invalidity contentions have been served."  *Id.* at 5.

Plaintiff acknowledges that the preseason loan patent claim is not necessary to the instant action and emphasizes the efficiency resulting from adding the '425 patent to the instant action.  *Id.* The factual overlap noted above, while not extensive, justifies the efficiency principles Plaintiff notes.  With regards to discovery, the shared inventor and use of the ipower CashCard do provide at least a minor justification for consolidating the '425 patent claim with the instant action. Moreover, a single consolidated *Markman* briefing schedule, hearing, pretrial, and trial that includes

7

the '425 patent will conserve both party and judicial resources.  The alternative would be for Plaintiff

to file a second lawsuit against Defendant accusing the preseason loan product of infringement of

the '425 patent.  While that may be Defendant's preference, the importance of efficiency and

conserving party and judicial resources, on balance, outweighs the minimal prejudice Defendant will

face as a result of the addition of the '425 patent, as will be discussed in the next section.

## III.   Potential Prejudice to Defendant in Allowing Amendment and the Availability of Continuance to Cure Prejudice

Plaintiff argues that Defendant will not be significantly prejudiced because there is ample

time to complete discovery and briefing on the '425 patent without having to modify the *Markman*

hearing and trial dates.  REPLY at 1.  Defendant responds that if the amendment is allowed,

Defendant will be required to undertake a completely new and distinct prior art search and analysis.

OPP. at 6.  Moreover, Defendant adds that extensive additional discovery will be needed, and thus

Defendant will suffer extensive prejudice if the '425 patent is added.  *Id.* at 6–7.

In support of its argument, Defendant cites *Semiconductor Energy Lab. Co. v. Sanyo N. Am.*

*Corp.* where the District Court for the District of Delaware denied a similar motion.  No. C.A. 00-

018-GMS, 2001 WL 194303, *3 (D. Del. 2001).   However, there the court had set a

September 1, 2000 deadline to amend pleadings, and the plaintiff waited until December 29, 2000

to file the motion to amend, even though the Plaintiff had indicated at a scheduling conference over

six months earlier that it was thinking of adding several additional patents to the complaint.

*Id.* at *1.  Further, the Court specifically noted that "the present motion to file an amended complaint

appears to arise simply out of [plaintiff's] desire to amend the complaint once rather than a recent

discovery of good cause to believe that two additional patents were infringed."  *Id.* at *2.

8

Here, Plaintiff served its infringement contentions on September 11, 2008, as required by the DCO. (*See* Doc. No. 27).  The deadline to amend pleadings is April 15, 2009.  DCO at 5.  Because Plaintiff's proposed amendments would affect the infringement and invalidity contentions, good cause is required.  PATENT RULE 3-6(b).  Plaintiff asserts that it recently discovered a sufficient factual basis to allege that Defendant's preseason loan product infringes the '425 patent—the classic justification for seeking leave to amend as noted by the court in *Semiconductor Energy*.  Moreover, unlike the plaintiff in *Semiconductor Energy*, here Plaintiff H&R Block timely filed the instant motion within days of discovering this new information, and there is no indication that Plaintiff had a justifiable basis to seek leave at any earlier point.  MOTION at 5–6.

Thus, while Defendant may suffer some prejudice if Plaintiff is allowed to add the '425 patent, this case is at such an early point in the litigation that Defendant will have sufficient time to make reasonable accommodations and adequately prepare for this new assertion of infringement.  The *Markman* hearing is scheduled for October 1, 2009, giving Defendant over nine months to prepare, while trial is set for May 10, 2010—over sixteen months away.  Given the factual overlap previously noted and the significant period of time before either the *Markman* hearing or trial, any prejudice Defendant may suffer from the addition of the '425 patent to the instant action can be alleviated by modifying the Court's DCO to ensure that the parties have sufficient time to complete discovery on the '425 patent and prepare for upcoming court dates.

Therefore, on balance the Court finds that Plaintiff has put forth an adequate explanation for failing to meet the deadline set forth by the Court's DCO.  While the '425 patent is not necessary to the instant action, it is important because consolidating Plaintiff's claim under the '425 patent will conserve party and judicial resources.  Finally, any prejudice Defendant may suffer as a result of the

addition of the '425 patent is minor and may be substantially alleviated by modifying the DCO in order to allow for sufficient time to complete the necessary discovery and preparation before the *Markman* hearing in October 2009.  Unlike *S&W Enters.*, Plaintiff's Motion here was timely and allowing the amendment will not unnecessarily delay either the scheduled *Markman* hearing or trial. Thus, Plaintiff has shown good cause to amend its Complaint and the DCO to add the '425 patent and a claim based thereon against Defendant's preseason loan product.

## CONCLUSION

For all the foregoing reasons, Plaintiff's Motion for Leave to Amend Complaint and Docket Control Order is **GRANTED.**  The Court **ORDERS** the parties to meet and confer regarding modifying the DCO and file a proposed Amended DCO with the Court by **January 5, 2009**, noting any remaining disagreements between the parties.  The Court further **ORDERS** Defendant to file an answer by **January 12, 2009** and Plaintiff to file amended infringement contentions by **January 14, 2009**.  The Clerk's office is directed to file Plaintiff's Amended Complaint.

**So ORDERED and SIGNED this 23rd day of December, 2008.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE