**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| H&R BLOCK TAX SERVICES, INC. | § | |
| | § | |
| v. | § | NO. 6:08-cv-37 |
| | § | |
| JACKSON HEWITT TAX | § | |
| SERVICE, INC. | § | |

### REPORT AND RECOMMENDATION OF
### UNITED STATES MAGISTRATE JUDGE

Before the Court is Defendant Jackson Hewitt Tax Service, Inc.'s ("Defendant") Motion for Summary Judgment of Invalidity of All Asserted Patent Claims (Doc. No. 53). A response and a reply were filed (Doc. Nos. 65, 68). The Court heard argument on June 22, 2009 (Doc. Nos. 79, 89). Following the hearing, Defendant requested (Doc. No. 82) and the Court granted leave to file supplemental briefing (Doc. No. 83). Defendant filed its supplement brief (Doc. No. 84), Plaintiff H&R Block Tax Services, Inc. ("Plaintiff") filed a response (Doc. No. 86), and Defendant filed a reply (Doc. No. 87). Having fully considered the parties' submissions and argument, the Court finds claims 1-3 of United States Patent No. 7,072,862 and claims 1-20 of United States Patent No. 7,127,425 invalid and **RECOMMENDS** that Defendant's Motion for Summary Judgment of Invalidity of All Asserted Patent Claims be **GRANTED-IN-PART** and **DENIED-IN-PART**.

### BACKGROUND

**I.    Procedural Background**

Plaintiff filed suit against Defendant on February 8, 2008, alleging infringement of United States Patents Nos. 7,072,862 ("the '862 patent") and 7,177,829 ("the '829 patent") (Doc. No. 1). On April 3, 2008, Defendant answered and counterclaimed for declaratory judgments of non-

infringement and invalidity of each patent (Doc. No. 14). On November 14, 2008, Plaintiff amended its complaint to include United States Patent No. 7,127,425 ("the '425 patent") (Doc. No. 32). Defendant answered and again counterclaimed for declaratory judgments of non-infringement and invalidity (Doc. No. 47). Defendant filed the present motion on March 13, 2009, and contemporaneously asked the Court to stay proceedings pending the resolution of the motion (Doc. No. 55). The Court denied that request (Doc. No. 66).

## II.     Factual Background

Plaintiff has asserted that Defendant infringes "one or more claims" of each of the '862, '829, and '425 patents.

The '862 patent is entitled "Spending Vehicles for Payments." The claimed invention "relates generally to a system and method for distributing payments to individuals and, more particularly, to a system and method for allocating a portion or all of an individual's payment into a spending vehicle." '862 Patent col. 1:6-9. The '862 patent consists of one independent claim, and two dependent claims. The independent claim reads:

> A computerized system for distributing spending vehicles comprising:
>     a payment due from a governmental entity;
>     an assignable right to receive said payment from said governmental entity, said assignable right held by an individual;
>     a spending vehicle offered by a third party sponsor to said individual in exchange for at least a portion of said individual's right to receive said payment due;
>     an assignment of at least a portion of said individual's right to receive said payment to said third party sponsor in exchange for said spending vehicle;
>     wherein information associating said payment with said spending vehicle from said third party sponsor is stored in and retrieved from a computer to facilitate processing of said spending vehicle and said spending vehicle is issued to said individual in an amount for spending by said individual of said at least a portion of

said payment, said governmental entity is electronically notified to transfer said at least a portion of said payment to said third party sponsor, and said at least a portion of said payment is received by said third party sponsor.

The '829 patent is entitled "Tax Refund System." The claimed invention "relates generally to a system for distributing tax refunds to taxpayers and, more particularly, to a system for reallocating some or all of a taxpayer's tax refund into a spending vehicle." '829 Patent col. 1:6-10. The '829 patent consists of one independent claim and five dependent claims. The independent claim reads:

> A method of providing at least a portion of an income tax refund amount to a taxpayer through a spending vehicle, comprising:
> arranging, among an electronic tax preparation system and a third party spending vehicle provider, to offer at least one spending vehicle to said taxpayer, said spending vehicle redeemable only at a retailer designated by the arrangement;
> preparing a tax return by or for said taxpayer using said electronic tax preparation system;
> obtaining tax return data from said electronic tax preparation system, said tax return data comprising an anticipated income tax refund amount from said taxing authority payable to said taxpayer;
> selecting by said taxpayer said at least one spending vehicle from a plurality of spending vehicles offered by said third party spending vehicle provider;
> executing at the time of preparation of said tax return using said electronic tax preparation system an agreement related to said spending vehicle in which said taxpayer agrees to assign at least a portion of said income tax refund amount to said third party spending vehicle provider and said third party spending vehicle provider agrees to accept said assignment and provide said selected spending vehicle to said taxpayer and to accept an associated risk for non-payment of said portion of said income tax refund, wherein said agreement does not involve issuing a loan or credit to said taxpayer and wherein said taxpayer and said spending vehicle provider obligations occur upon submission of said tax return to said taxing authority;
> transferring electronically said at least a portion of said income tax refund amount to an account for said third party spending vehicle provider; and
> issuing said selected spending vehicle to said taxpayer, said

selected spending vehicle having a prepaid value greater than said assigned at least a portion of said tax refund and said taxpayer redeems said selected spending vehicle at said designated retailer to purchase products or services.

The '425 patent is entitled "System and Method for Providing a Loan to a Taxpayer Based on a Pre Year-End Tax Refund." The claimed invention "relates generally to a tax refund system, and more particularly, to a system in which a taxpayer receives a loan based on his or her estimated tax refund prior to the year end holidays of the calendar year preceding the year in which the taxpayer files his or her tax return forms." The challenged "computerized systems" claims consist of four independent claims and twelve dependent claims. Although the independent claims differ in their specifics, claim 1 is representative:

> A computerized system for providing a loan to a taxpayer prior to the end of the current tax year, comprising:
> historical income tax refund data for said taxpayer, said historical income tax refund data comprising income tax refund amount data for at least one year prior to the current year and in a computer;
> year-to-date income data for the current year, for said taxpayer, wherein said date is prior to the end of the current tax year and said year-to-date income data is in said computer;
> year-to-date expense data for the current year, for said taxpayer, wherein said date is prior to the end of the current tax year and said year-to-date expense data is in said computer;
> a process in said computer to determine prior to the end of the current tax year an estimated income tax refund amount for said taxpayer for said current tax year using said historical income tax refund data, said year-to-date income data for a date prior to the end of the current tax year, and said year-to-date expense data for a date prior to the end of the current tax year;
> a loan provided to said taxpayer prior to the end of said current tax year in an amount based on said estimated income tax refund amount for said current tax year for said taxpayer as determined by said computer; and
> an income tax refund for said current tax year, wherein said income tax refund is based on a tax return prepared using actual income and expense data and filed after said current tax year for said

>   taxpayer and is applied to the balance of said loan based on said estimated income tax refund.

The challenged method claims consist of independent claim 17 and its dependent claims. Claim 17 reads:

>   A computer-implemented method for providing a loan to a taxpayer prior to the end of the current tax year, said method comprising:
>       determining an income tax refund amount for at least one tax year prior to the current tax year;
>       estimating at a computer said taxpayer's income tax refund amount due for said current year prior to the end of said current tax year based on said income tax refund amount;
>       providing a loan to said taxpayer prior to the end of the current tax year in amount based on said estimated income tax refund amount due for said current tax year for said taxpayer as determined by said computer;
>       assigning said taxpayer's income tax refund to said lender;
>       preparing a tax return for said taxpayer using actual data after the end of the current tax year;
>       filing said tax return with a taxing authority;
>       receiving said taxpayer's income tax refund from said taxing authority; and
>       applying said taxpayer's income tax refund to said loan based on said estimated income tax refund.

### **PARTIES' CONTENTIONS**

The parties devote a substantial portion of their briefing to whether certain "system" claims are apparatus claims or process claims, and whether *In re Bilski*, 545 F.3d 943, 950-51 (Fed. Cir. 2008) (en banc), *petition for cert. granted*, 129 S.Ct. 2735 (2009), is applicable to such claims. Defendant argues they are process claims, DEF.'S MOT. at 13-15, whereas Plaintiff argues they are "machine" claims. PL.'S RESP. at 12-14. Accordingly, Plaintiff contends *Bilski* and the machine-or-transformation test are inapplicable. Plaintiff alternatively argues that the claims succeed under the machine-or-transformation test. PL'S RESP. at 14-28  Defendant contends that the machine-or-transformation test is applicable regardless of how the claims are categorized, DEF.'S MOT. at 15-17,

and that the claims fail the test. DEF.'S MOT. at 17-29.

Defendant argues that any recitations of a machine in the '862, '829, and '425 patents are directed toward data-gathering steps and therefore fail to tie the invention to a particular machine or to impose any meaningful limits on the scope of the claims. DEF.'S MOT. at 22-28. Defendant further argues that the '862, '829, and '425 patents fail to transform physical objects or data representative of physical objects. *Id.*; DEF.'S REPLY at 7-10.

Plaintiff contends the '862, '829, and '425 patents are sufficiently tied to particular machines and transform data representing physical objects. Plaintiff argues that the '862 patent requires the use of a machine to store and retrieve information to facilitate the processing of a spending vehicle. PL.'S RESP. at 15. Plaintiff argues that the '829 patent requires the use of a machine to prepare and relay a tax return, and to electronically transfer a portion of a tax refund. PL.'S RESP. at 16. Plaintiff further argues that the '425 patent requires the use of a machine to store data and to determine an estimated income tax refund amount. PL.'S RESP. at 17-18. Finally, Plaintiff asserts that the '862, '829, and '425 patents transform data that represents money into physical objections – a spending vehicle and a loan. PL.'S RESP. at 23-27.

## LEGAL STANDARD

"Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A "genuine issue" of material fact exists when a fact requires resolution by the trier of fact and a reasonable jury could resolve a factual matter in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248–49 (1986). When ruling on a motion for summary judgment, the Court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the non-moving party. *Id.* at 255.

A patent is presumed valid. 35 U.S.C. § 282; *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 412 (2007). This presumption may be overcome only by clear and convincing evidence. *Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1355 (Fed. Cir. 2007). "Whether a claim is drawn to patent-eligible subject matter under § 101 is a threshold inquiry" and an issue of law. *In re Bilski*, 545 F.3d 943, 950-51 (Fed. Cir. 2008) (en banc), *petition for cert. granted*, 129 S.Ct. 2735 (2009)**.** Fundamental principles such as "[p]heonomena of nature, though just discovered, mental processes, and abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Benson*, 409 U.S. at 67. Application of such a principle "to a known structure or process may well be deserving of patent protection." *Diehr*, 450 at 187.

"[T]he machine-or-transformation test is the only applicable test and must be applied, in light of the guidance provided by the Supreme Court and [the Federal Circuit], when evaluating the patent-eligibility of process claims." *Bilski*, 545 F.3d at 964. The machine-or-transformation test, is subject to two considerations: first, the machine or transformation "must impose meaningful limits on the claim's scope"; and second, the machine or transformation "must not merely be insignificant extra-solution activity." *Bilski*, 545 F.3d at 961-962. The imposition of meaningful limits prevents claims from preempting "all uses of a fundamental principle in all fields and . . . all uses of the principle in only one field." *Id.* at 957. The prohibition against tying a claim to an extra-solution machine or transformation protects against subversion of the patent system by clever draftsmen. *Id.*

(citing *Flook*, 437 U.S. at 590). "[A] claim that is tied to a particular machine or brings about a particular transformation of a particular article does not pre-empt all uses of a fundamental principle in any field but rather is limited to a particular use, a specific application." *Id.*

To pass the transformation prong of the test, the claimed process must transform a particular article. *Bilski*, 545 F.3d at 961-62. "This transformation must be central to the purpose of the claimed process." *Id.* at 962. Traditionally, an article may be a physical object or substance. *Id.* In modern applications, an article may be electronic signals or electronically-manipulated data if the data represents physical and tangible objects. *Id.* at 962-63. When a process transforms qualified data, transformation of the underlying physical objects is not necessary. *Id.* at 963. "[T]ransformations or manipulations simply of public or private legal obligations or relationships, business risks, or other such abstractions cannot meet the test because they are not physical objects or substances, and they are not representative of physical objects or substances." *Id.*

*Bilski* considered claims that did not recite machines and therefore the Federal Circuit left "to future cases the elaboration of the precise contours of machine implementation, as well as the answers to particular questions, such as whether or when recitation of a computer suffices to tie a process claim to a particular machine." *Id.* at 962. Thus, the Court must turn to Supreme Court precedent for guidance. The *Benson* court held a patent on the conversion of binary-coded decimal numerals into pure binary numerals was not patent-eligible. There the claim recited "a general-purpose digital computer." *Benson*, 409 U.S. at 65. The court did not take the opportunity to determine whether the algorithm was tied to a particular machine, observing instead that the practical effect of the claim would be to wholly pre-empt the use of the formula. *Id.* at 71-72. In *Diehr* the process also involved the use of a computer. Unlike in *Benson*, however, the *Diehr* court

held that, although the computerized process utilized a fundamental principle, it did not wholly pre-empt its use. 450 U.S. at 187. In *Diehr*, the formula was claimed only with respect to the process of curing rubber. *Id.* Other uses of the formula were not claimed. *Id.* at 187-188. A process is sufficiently tied to a particular machine when that machine is central to the purpose of the claimed process. *Cf. Bilski*, 545 F.3d at 962 (holding a transformation "must be central to the purpose of the claimed process").

## DISCUSSION

### I. The '862 claims and '425 "computerized system" claims

Although the machine-or-transformation test is the standard for process claims, *see Bilski*, 545 F.3d at 954 ("A claimed process is surely patent-eligible under § 101 if: (1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing"), it can aid the Court in illuminating whether the claimed systems are directed toward patentable subject matter. *See Parker v. Flook*, 437 U.S. 584, 590 (1978) ("The concept of patentable subject matter under § 101 is not 'like a nose of wax which may be turned and twisted in any direction'") (quoting *White v. Dunbar*, 119 U.S. 47, 51 (1886)). A court should not be "overly concerned with pigeonholing subject matter once the court assures itself that some category has been satisfied." *In re Nuijten*, 500 F.3d 1346, 1354 (Fed. Cir. 2007).

The Court has not yet issued its claim construction opinion. Thus, for the purposes of this motion the Court accepts Plaintiff's contentions that the '862 and '425 patents claim "computerized systems" that are capable of performing certain functions as defined by the claims allegedly functional language. *See Cybersource Corp. v. Retail Decisions, Inc.*, 620 F. Supp. 2d 1068, 1073 (N.D. Cal. 2009) (accepting patentee's description of its claims for purposes of § 101 summary

judgment motion brought before claim construction).

### A. The '862 claims are directed toward unpatentable subject matter

The '862 patent claims a "computerized system." The claim recites "an assignable right" that is "held by an individual," "a spending vehicle offered by a third party sponsor," an "assignment to . . . said third party sponsor," and "payment . . . received by said third party sponsor." Defendant argues this language describes steps and leads to the conclusion that the '862 patent claims a process. Plaintiff argues these elements are functional limitations that describe capabilities of the claimed system. Assuming Plaintiff is correct, the claimed system must be larger than the recited computer. The computer is a component of the claimed system that simply stores and retrieves data associating a payment with a spending vehicle.[1] The remaining components of the system are parts or elements capable of holding and assigning rights, offering spending vehicles, and receiving payments. In light of the specification, it is clear that these "components" are individuals and organizations. Thus, the '862 claims describe a "system" consisting of a computer and certain financial relationships between entities.

A financial relationship is simply an abstract intellectual concept. Absent the recitation of a computer, the '862 patent would certainly claim unpatentable subject matter.[2] *See Benson*, 409 U.S. at 67 (reiterating "the long standing rule that '(a)n idea of itself is not patentable'" (quoting

---

[1] The Court notes that the claim also states "said governmental entity is electronically notified to transfer." There is nothing in the claim language or the specification that compels the conclusion that the computer performs the notification.

[2] Although the Court acknowledges that *Bilski* and the machine-or-transformation test considered process claims, the Court notes that the prohibition against claiming a fundamental principle, here financial relationships between individuals and entities, is applicable to all classes of statutory subject matter. *See, e.g.,Funk Bros. Seed Co. v. Kalo Co.*, 333 U.S. 127 (1948) (holding invalid a product claim for preempting a fundamental principle); *Gottschalk v. Benson*, 409 U.S. 63 (1972) (holding invalid a process claim for preempting a fundamental principle). The rationale underlying *Bilski* is found in these and similar Supreme Court cases and it is from them that the machine-or-transformation test was derived.

*Rubber-Tip Pencil Co. v. Howard*, 87 U.S. 498 (1874))).  Plaintiff argues the present recitation of a computer imposes meaningful limits on the scope of the claim such that a fundamental principle is not fully preempted.  The Court disagrees.  The computer component is not a particular, special-purpose machine; it is capable of no more than storing and retrieving data memorializing associations.  The computer is an insignificant, extra-solution component of the claimed system. *Cf. Bilski*, 545 F.3d at 961-963 (concluding that data gathering steps are insignificant extra-solution activity).  If an extra-solution step is insufficient to render an otherwise unpatentable process claim valid, then by analogy an extra-solution component is insufficient to render an otherwise unpatentable "system" claim valid.  Thus, the addition of a generic computer, capable only of storing and retrieving data associating payments with spending vehicles, to the claimed system fails to impose meaningful limits on these claims.  Therefore, the Court finds the claims of the '862 patent invalid for claiming unpatentable subject matter.

Alternatively, the Court finds the claim invalid for covering both the process and machine classes of patentable subject matter.  *See Ex Parte Lyell*, 17 U.S.P.Q.2d 1548, 1551 (1990) (finding claim invalid for overlapping two different statutory subject matter); *Manual of Patent Examining Procedure*, § 2173.05(p).

### B. The '425 claims are directed toward unpatentable subject matter

Independent claims 1, 5, 9, and 13 of the '425 patent all claim "computerized system[s] for providing a loan to a taxpayer prior to the end of the current tax year . . . ."  Claim 1 is representative of the other independent claims.  Claim 1 recites certain data stored in a computer, a process in a computer to estimate an income tax refund, a loan that is provided to a taxpayer, and a tax refund that is applied to the balance of the loan.  Defendant argues these limitations are steps and thus claim

1 is a process claim. Plaintiff contends claim 1 claims a system for providing a loan that incorporates a computer component to estimate an income tax refund amount based on certain data stored in the computer.

Absent the recitation of a computer, claim 1 would certainly claim unpatentable subject matter by merely reciting providing a loan and applying a payment to the balance of a loan. *See Benson*, 409 U.S. at 67. Plaintiff argues, however, that the computer is a critical component of the invention. The Court disagrees. The computer component is not a particular, special-purpose machine; it is capable of no more than storing data and estimating a tax refund amount. The computer component is an insignificant, extra-solution component of the claimed system. *Cf. Bilski*, 545 at F.3d 963 ("adding a data gathering step to an algorithm is insufficient to convert that algorithm into a patent-eligible process"). The Court previously explained that a component capable only of storing and retrieving data is insufficient to impose meaningful limits on a claim. Here, a component capable of estimating an income tax refund amount is also insufficient, as the tax refund amount is simply a variable that informs the value of the loan provided by the system. *Cf. In re Grams*, 888 F.2d 835, 840 (Fed. Cir. 1989) (finding step of deriving data for use in an algorithm insufficient to render the process patentable). Therefore, the Court finds claim 1 invalid claiming unpatentable subject matter.

The Court's conclusion and rationale are equally applicable to independent claims 5, 9, and 13. Therefore, the Court finds claims 1-16 of the '425 patent invalid for claiming unpatentable subject matter.

Alternatively, the Court finds the claims invalid for covering both the process and machine classes of patentable subject matter. *See Ex Parte Lyell*, 17 U.S.P.Q.2d 1548, 1551 (1990) (finding

claim invalid for overlapping two different statutory subject matter); *Manual of Patent Examining Procedure*, § 2173.05(p).

## II. Application of the machine-or-transformation test

As an initial matter, the Court finds that none of the remaining claims at issue pass the transformation prong of the test. Plaintiff argues that the '829 claims transform "tax return data into an anticipated tax refund amount which is transformed into a spending vehicle issued by a third party provider" and that the '425 method claims transform "an individual's income and expense data into an estimated income tax return amount which is transformed into a loan distributed to a tax payer." PL.'S RESP. at 24. Plaintiff argues the data "represent real world items (e.g., money)." *Id.* at 25. It argues that income and expense data do not represent hypothetical income and expenses but rather "actual money which has been earned and spent." *Id.* The final transformation, it urges, is from data to a loan for a specific amount of money. *Id.*

At all steps in the claimed processes, the manipulated data represent legal obligations and relationships. *See Bilski*, 545 F.3d at 963. However described, the data and resulting loan represent money. Although tangible in some forms, money is simply a representation of a legal obligation or abstract concept. Therefore, the Court finds that the claims of the '829 patent and the method claims of the '425 patent fail the transformation prong of the machine-or-transformation test.

### A. The '829 claims pass the machine-or-transformation test

The '829 claims recite a method utilizing an "electronic tax preparation system." Plaintiff argues this requires the use of a computer. A computer is undoubtedly a "machine." *See In re Ferguson*, 558 F.3d 1359, 1364 (Fed. Cir. 2009) (stating "a machine is a concrete thing, consisting of parts, or of certain devices and combination of devices" (quotation omitted)). The Court must

determine whether this recitation of a computer imposes meaningful limits. *Bilski*, 545 F.3d at 961-962.

The parties dispute the scope of the computer's involvement in the claimed process.[3] Turning to the language of the claim, the Court identifies computer involvement only in the steps of: 1) preparing a tax return; 2) obtaining tax return data; and 3) executing an agreement related to a spending vehicle. The steps of preparing a tax return and obtaining tax return data are insignificant extra-solution activity. *See Bilski*, 545 at F.3d 963 ("adding a data gathering step to an algorithm is insufficient to convert that algorithm into a patent-eligible process"); *see also In re Grams*, 888 F.2d 835, 840 (Fed. Cir. 1989) (finding step of deriving data for use in an algorithm insufficient to render the process patentable). Calculating and obtaining, i.e. deriving, tax refund data is a data gathering step and therefore insufficient to make the claimed process patent-eligible. However, the computer is also used to execute an agreement between a taxpayer and a third party spending vehicle provider. The execution of such an agreement is an essential part of the claimed invention because the reallocation of some or all of a tax refund into a spending vehicle is dependent upon the execution. Thus, the computer's involvement is not insignificant extra-solution activity. The use of the computer also imposes meaningful limits on the claim because the claim does not preempt all methods of executing agreements between a taxpayer and a third party spending vehicle provider. It only preempts those methods that utilize a computer that has been specially programmed to operate as an electronic tax preparation system. *See In re Alappat*, 33 F.3d 1526, 1545 (Fed. Cir.

---

[3] Defendant describes the computer's two functions as 1) data gathering, including preparing a tax return, obtaining tax return data, and providing the taxpayer with the option to select a spending vehicle; and 2) electronically transferring a portion of the refund to a spending vehicle provider. DEF'S MOT. at 25. Plaintiff states the "computer is used to prepare and relay a tax return with an anticipated refund amount, and to electronically transfer a portion of the tax refund into an account for the third party sponsor of spending vehicle." PL'S RESP. at 20.

1994) ("a general purpose computer in effect becomes a special purpose computer once it is programmed to perform particular functions") *abrogated by Bilski*, 545 F.3d 943; *In re Prater*, 415 F.2d 1393, 1404 n. 29 (CCPA 1969).  The Court finds the claims of the '829 patent are sufficiently tied to a particular machine and therefore pass the machine-or-transformation test.  Accordingly, the claims are directed to patentable subject matter.

### B. The '425 claims fail the machine-or-transformation test

The '425 method claims recite a "computer-implemented method for providing a loan to a taxpayer prior to the end of the current tax year."  Once again, the Court notes that a computer is a machine.  *See Ferguson*, 558 F.3d at 1364.  The only recitations of a computer within the claim are the step of "estimating at a computer said taxpayer's income tax refund amount" and "providing a loan to said taxpayer . . . based on an estimated tax refund amount . . as determined by said computer."  Even assuming Plaintiff's contention that the computer is also used to store income and expense data, the claim's recitations of a generic computer are inadequate.  As previously noted, deriving tax refund data are data gathering steps and therefore insufficient to make the claimed process patent-eligible.  *See Bilski*, 545 at F.3d 963; *In re Grams*, 888 F.2d at 840.  The Court finds that claims 17-20 of the '425 patent fail the machine-or-transformation test and therefore the claims are not directed to patentable subject matter.

### CONCLUSION

For all the foregoing reasons, the Court **RECOMMENDS** that Defendant's Motion for Summary Judgment of Invalidity of All Asserted Patent Claims be **GRANTED** in part and **DENIED** in part.  Within ten (10) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.  A

party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within ten (10) days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court.  *Douglass v. United States Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

**So ORDERED and SIGNED this 10th day of November, 2009.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE