# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **H&R BLOCK TAX SERVICES, INC.** | § | |
| | § | |
| **v.** | § | **NO. 6:08-cv-037** |
| | § | |
| **JACKSON HEWITT TAX** | § | |
| **SERVICE, INC.** | § | |

## MEMORANDUM OPINION AND ORDER

      This claim construction opinion construes the disputed terms in U.S. Patent No. 7,177,829 ("the '829 patent"). Plaintiff H&R Block Tax Services, Inc. ("Plaintiff") accuses Defendant Jackson Hewitt Tax Service, Inc. ("Defendant") of infringing one or more of the claims of the '829 patent. The parties submitted twenty-three disputed claim terms for construction (Doc. Nos. 85, 93, 100, 102). Previously, the Court recommended finding U.S. Patent Nos. 7,072,862 and 7,127,425 invalid (Doc. No. 108) and therefore declines to construe the terms found only in the claims of those patents. The Court construes the remaining eight terms found in the '829 patent. A *Markman* hearing was held on October 1, 2009. For the reasons stated, the Court adopts the constructions set forth below.

## OVERVIEW OF THE PATENT

      The '829 patent is entitled "Tax Refund System." The claimed invention "relates generally to a system for distributing tax refunds to taxpayers and, more particularly, to a system for reallocating some or all of a taxpayer's tax refund into a spending vehicle." '829 Patent col. 1:6-10. The '829 patent consists of one independent claim and five dependent claims. The independent claim recites:

> A method of providing at least a portion of an income tax refund amount to a taxpayer through a spending vehicle, comprising:
>     arranging, among an electronic tax preparation system and a third party spending vehicle provider, to offer at least **one spending vehicle** to said taxpayer, said spending vehicle **redeemable only at a retailer designated by the arrangement**;
>     preparing a tax return by or for said taxpayer using said electronic

tax preparation system;

obtaining tax return data from said electronic tax preparation system, said tax return data comprising an anticipated income tax refund amount from said taxing authority payable to said taxpayer;

selecting by said taxpayer said at least one spending vehicle from a plurality of spending vehicles offered by said third party spending vehicle provider;

**executing** at the time of preparation of said tax return using said electronic tax preparation system **an agreement** related to said spending vehicle in which said taxpayer **agrees to assign** at least a portion of said income tax refund amount to said third party spending vehicle provider and said third party spending vehicle provider **agrees to accept said assignment** and provide said selected spending vehicle to said taxpayer and to **accept an associated risk for non-payment** of said portion of said income tax refund, wherein said agreement does not involve issuing a loan or credit to said taxpayer and wherein said taxpayer and said spending vehicle provider obligations occur upon submission of said tax return to said taxing authority;

transferring electronically said at least a portion of said income tax refund amount to **an account for said third party spending vehicle provider**; and

issuing said selected spending vehicle to said taxpayer, said selected spending vehicle **having a prepaid value greater than said assigned at least a portion of said tax refund** and said taxpayer redeems said selected spending vehicle at said designated retailer to purchase products or services.

Dependent claim 2 recites:

The method of claim 1, wherein said selected spending vehicle is selected from the group consisting of one of the following: a debit card, checking card, electronic account, coupon, voucher, gift card, rebate certificate and stored account.

Dependent claim 5 recites:

The method of claim 1, wherein said third party spending vehicle provider is selected from the group consisting of a retailer, a financial institution, a service provider, a wholesaler, a distributor, a manufacturer, an entertainment entity, and a taxing authority.

## **LEGAL STANDARD**

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005)

(quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope. *See id.*; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). This intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. First, a term's context in the asserted claim can be very instructive. *Id*. Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id*. Differences among the claim terms can also assist in understanding a term's meaning. *Id*. For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. at 1314-15.

Claims "must be read in view of the specification, of which they are a part." *Id*. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations,

the inventor's lexicography governs. *Id.* Also, the specification may resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent."). The doctrine of prosecution disclaimer is well established and prevents a patentee from recapturing through claim interpretation specific meanings disclaimed during the prosecution of the patent. *See Omega Eng'g, Inc. v. Raytek Corp.,* 334 F.3d 1314, 1223 (Fed.Cir.2003). The prosecution history must show that the patentee "clearly and unambiguously" disclaimed or disavowed the proposed interpretation during the patent's prosecution to obtain claim allowance. *Middleton, Inc. v. 3M Co.,* 311 F.3d 1384, 1388 (Fed.Cir.2002). "Indeed, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover." *Spectrum Int'l v. Sterilite Corp.,* 164 F.3d 1372, 1378-79 (Fed.Cir.1998). "As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Omega Eng'g, Inc.,* 334 F.3d at 1324.

## DISCUSSION

## I. "Spending Vehicle"

| Claim | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| **spending vehicle**<br>*Claim 1* | A financial product with value for spending, including a credit card, a debit card, a cash card, a checking card, a spending account, a checking account, an e-wallet account, electronic spending account, a gift card, a discount card, discount certificate, a rebate, a coupon, or a voucher, but not cash. | Anything of value to the payee which the payee agrees to accept ... instead of receiving a regular payment by check or cash or direct deposit. Anything that may be of value to a payee that the payee agrees to accept in place of a "regular payment," including without limitation, a credit card, a debit card, a cash card, a checking card, a spending account, a checking account, an e-wallet account, an electronic spending account, a gift card, a discount card, a discount certificate, a rebate, a coupon, a voucher, an electronic account, and any vehicle in which a taxpayer receives spending power in a particular dollar amount. Moreover, a "spending vehicle" may: include cash or check from a third party (including a government entity), but not cash or check in the form of a regular or periodic payment from the government entity; and be in any form including electronic accounts, paper accounts, and physical cards. |

Plaintiff argues that Defendant's proposal improperly broadens the definition of the term. Although the specification does not specifically define spending vehicles, it does provide context and support for construing the term more narrowly than anything of value to the payee. Plaintiff contends that spending vehicles operate like financial products, and that all the recited examples of spending vehicles are financial products used in place of regular cash payments.

Defendant counters that the specification defines a spending vehicle as "something of value to the

taxpayer." Thus, Defendant urges the Court to construe the term to include anything of value to the taxpayer that may be accepted in place of a regular payment. Defendant argues that, contrary to the specification's broader language, Plaintiff's proposal limits the construction of the term to disclosed embodiments.

The '829 specification provides context limiting the scope of the term "spending vehicles" such that it is narrower than "anything of value." The patent's abstract describes a spending vehicle as "a credit, debit, or cash card, spending account, coupon, or rebate. . . ." The specification later identifies a spending vehicle as "a financial vehicle such as a credit card, debit card, e-wallet account, gift card, or any other type of spending vehicle that would enable the holder of the spending vehicle to purchase products or services." '829 Patent col. 3:27-32; *see also* '829 Patent col. 4:1-7 ("The spending vehicle may take the form of many different embodiments, including but not limited to, credit cards, debit cards, cash cards, spending accounts, electronic spending accounts, coupons, discount certificates, rebate certificates, and any other vehicle in which a taxpayer receives spending power in a particular dollars amount . . ."). The "something of value" language identified by Defendant does not describe the spending vehicle, but rather what the spending vehicle can be used for. *See* '829 Patent col. 4:5-6, 9-11 (a "vehicle in which a taxpayer receives spending power in a particular dollar amount useable at . . . any participating entity through which a taxpayer may purchase *something of value to the taxpayer*" (emphasis added)). Thus, the specification creates context for construing the term by providing examples of spending vehicles and disclosing their intended use. Given this context, the Court rejects Defendant's contention that a spending vehicle may constitute anything of value to a taxpayer.

Having resolved the parties' claim scope dispute, the Court must now determine how best to communicate the term to a lay jury. The Court finds that the term does not have a plain and ordinary meaning that would be readily understood by a lay jury. Although the Court agrees with Plaintiff's

proposal to the extent that it recites examples of spending vehicles identified in the specification and excludes cash, the Court finds it unnecessarily lengthy and potential confusing to a jury. Therefore, the Court will construe the term "spending vehicle" as "a financial product, but not cash, used for purchasing something of value."

## II. "Assign" and "Assignment"

| Claim | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| **assign / assignment**<br>*Claim 1* | Ordinary meaning. Alternatively, the transfer of a right or interest | The present unconditional, legal transfer of the right to receive at least a portion of a payment that gives the transferee the right to receive such portion of the payment that the transferor was entitled to receive prior to the transfer. The assignment is not conditional upon any further performance or non-performance by the transferor or any third party. |

Defendant contends that its construction reflects the ordinary meaning of the term as it is used in the specification and claims. Defendant argues that an assignment must be a present transfer of the right to receive a payment that is not conditioned upon further performance.

The Court finds that the scope of the terms is limited to the present transfer of a property right, which is tantamount to Plaintiff's proposal. Permutations of the term "assign" appear throughout the specification. *See* '829 Patent col. 1:44-49; 1:62-63; 2:1-2, 51-53; 3:1-8, 60-64; 4:53-55; 5:1-4. The terms are used not only to describe a transfer of an interest between a taxpayer and a spending vehicle provider, but also unclaimed transfers between spending vehicle providers, *see* '829 Patent col. 4:53-55, and transfers between the taxpayer and a tax preparer. *See* '829 Patent col. 5:1-4. In each instance, the terms are used in their ordinary meaning to indicate the present transfer of a right or interest from one party to

another. *See Black's Law Dictionary* (8th ed. 2004) (defining the term assign as "to transfer rights or property"); *see also* Mar. 21, 2005 Amendment, p.10 (describing an assignment as something "which transfers a property right to another party"). It is unnecessary to muddle the definition by explicitly stating that a transfer is unconditional; an agreement to assign may be conditional, but an assignment is simply a transfer.

Having determined the scope of the claim terms, the Court must now determine how best to communicate them to a lay jury. The Court finds that the terms "assign" and "assignment" are readily understandable for a jury and thus no construction is necessary. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008); *Fenner Inv. Ltd. v. Microsoft Corp.*, No. 6:07-cv-8, 2008 WL 3981838 at *3 (E.D. Tex. Aug.22, 2008) (finding that a court need not construe a disputed term as long as it has resolved the claim scope dispute between the parties). Although the Court will not construe the terms, the parties may not interpret the terms in a manner that is inconsistent with this opinion.

### III. "Third party spending vehicle provider"

| Claim | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| **Third party spending vehicle provider**<br>*Claim 1* | Sponsor of the spending vehicle that may include any entity besides the government issuing the payment or the individual receiving the payment | Any third party entity, including a government entity that offers a spending vehicle, directly or indirectly, to an individual in exchange for the assignment of a right to receive a payment. |

Plaintiff argues that the context of the specification limits the term "third party spending vehicle provider" to companies and organizations, but not government entities. Plaintiff contends that the specification describes the government as a payor, separate and distinct from spending vehicle providers, and thus Defendant's proposal is not supported by the patent. Defendant identifies claim 5 as reciting

"said third party spending vehicle provider is selected from the group consisting of a retailer, financial institution, a service provider, a wholesaler, a distributor, a manufacturer, an entertainment entity, and a taxing authority." Defendant further argues that the specification describes an embodiment in which a taxing authority is a spending vehicle provider. Plaintiff responds that while a taxing authority may issue a spending vehicle, it would not do so as a "third party."

The Court finds that a government entity may be a third party spending vehicle provider. The specification clearly discloses a government taxing authority acting as a spending vehicle provider. *See* '829 Patent col. 3:33-37 ("In another embodiment of the present invention the IRS may provide its owning spending vehicle to the taxpayer"). Although spending vehicle providers are alternatively referred to as "third party spending vehicle provider[s]," *see, e.g.*, '829 Patent col. 2:42-58, and "spending vehicle providers," *see, e.g.*, '829 Patent col. 3:45-55, the use of "third party" as a modifier is too inconsistent to clearly delineate which entities may or may not be third parties. *Compare* '829 Patent col. 2:49 (describing tax preparer other than the taxpayer as "a third party preparer") *with* '829 Patent col. 4:25-33 (declining to designate a financial institution as a "third party").

Claim 5 depends from claim 1. "[D]ependent claims can supply additional context for construing the scope of the independent claims associated with those dependent claims." *Intamin, Ltd. v. Magnetar Tech., Corp.*, 483 F.3d 1328, 1335 (Fed. Cir. 2007). Claim 5 clearly includes "a taxing authority" within the group from which "said third party spending vehicle provider" may be selected. The scope of the term is presumably narrower in claim 5 than it is in claim 1. *See AK Steel Corp. v. Sollac and Ugine*, 344 F.3d 1234, 1242 (Fed. Cir. 2003) ("depending claims are presumed to be of narrower scope than the independent claims from which they depend"). Plaintiff argues that a third party spending vehicle may not include a government entity, but clearly, in light of claim 5, this cannot be the case. *See Intamin*, 483 F.3d at 1335 ("[a]n independent claim impliedly embraces *more* subject matter than its narrower

dependent claim" (emphasis added)).  Therefore, the term "third party spending vehicle" may encompass government entities that provide spending vehicles.

The Court notes that there are no other scope disputes between the parties' proposals.  Defendant's proposal explicitly states that a spending vehicle provider may offer a spending vehicle either directly or indirectly.  Plaintiff's proposal also acknowledges this possibility by simply defining a spending vehicle provider as one that sponsors the vehicle.

Having resolved the parties' claim scope dispute, the Court must now determine how best to communicate the term to a lay jury.  The Court construes the term "third party spending vehicle provider" as "a sponsor of a spending vehicle."  Although the Court's construction does not explicitly include government entities within the scope of the term, the parties may not interpret the terms in a manner that is inconsistent with this opinion.

## IV. "Redeemable only at a retailer designated by the arrangement"

| Claim | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| **Redeemable only at a retailer designated by the arrangement**<br>*Claim 1* | Ordinary meaning. Alternatively, conditionally recoverable only at a designated merchant | The spending vehicle is redeemable only at a retailer designated by the arrangement between an electronic tax preparation system and a third party – and at no other entities. |

Plaintiff argues that Defendant's proposal improperly limits the scope of the term to exclude redemption of spending vehicles at non-retail entities described in the patent.  *See* '829 Patent col. 4:6-11 (describing entities where vehicles can be used as "any participating retailer, financial institution, service provider, wholesaler, distributor, manufacturer, entertainment entity, and any participating entity . . .").  Plaintiff contends that "[t]he spending vehicle is not *only* redeemable at designated retailers; rather, the *only* retailers at which it is redeemable are designated ones."  That is, among the group described as "retailers," the spending vehicle can only be redeemed at a subset of retailers designated by the

arrangement. A spending vehicle may also be redeemed, Plaintiff argues, at any of the other types of entities described by the specification, whether designated by the arrangement or not.

Defendant argues that the plain language of the claim limits entities at which a vehicle can be redeemed to retailers designated by the arrangement, and no others. Defendant notes that during prosecution the patentee distinguished its invention from the prior art on the basis that the spending vehicles were "dedicated to particular businesses or [] for particular purposes." Plaintiff responds that Defendant's proposal excludes embodiments where retailers may be implicitly designated, such as in an embodiment where the spending vehicle is a credit card and it redeemable at all retailers that accept the credit card.

The Court agrees with Defendant that the scope of the term limits redemption of the spending vehicle to retailers and excludes any "non-retailers." The specification describes locations where a spending vehicle may be redeemed as those where it is accepted or may be used. *See* '829 Patent col. 1:51-52; 2:57-59; 4:49-51. The specification more specifically describes types of locations, such as "retailer, financial institution, service provider, wholesaler, distributor, manufacturer, entertainment entity, and any participating entity through which a taxpayer may purchase something of value to the taxpayer." '829 Patent col. 4:6-11. However, it is clear from the plain language of claim 1, that spending vehicles are only redeemable at retailers. Thus, pursuant to claim 1, spending vehicles are not redeemable at financial institutions, service providers, wholesalers, distributors, manufacturers, entertainment entities, or any other participating entity that is not a retailer.

The Court agrees with Plaintiff, however, that the arrangement need not explicitly designate every retailer that a spending vehicle may be redeemed at. The specification describes embodiments where the spending vehicle is a credit card or debit card. *See, e.g.*, '829 Patent col. 3:45-60 (noting a debit card may be "good only at . . . some group of retailers"). The specification also describes redemption locations as

"locations where it is accepted" or at "participating sales outlets." '829 Patent col. 2:57-58; 4:51. The specification makes clear that an arrangement may simply designate a group of retailers consisting of those retailers that accept a particular type of spending vehicle. Thus, retailers at which a spending vehicle may be redeemed may be explicitly or implicitly designated.

Having resolved the parties' claim scope dispute, the Court must now determine how best to communicate the term to a lay jury. The Court finds that the language of the term is readily understandable for a jury and thus no construction is necessary. *See O2 Micro Int'l*, 521 F.3d at 1362; *Fenner Inv.*, 2008 WL 3981838 at *3. Although the Court will not construe the terms, the parties may not interpret the terms in a manner that is inconsistent with this opinion.

**V. "Executing at the time of preparation of said tax return using said electronic tax preparation system an agreement related to said spending vehicle in which said taxpayer agrees to assign . . . and said third party spending vehicle provider agrees to accept" & "Accept an associated risk for non-payment"**

| Claim | Plaintiff's Proposal | Defendant's Proposal |
|-------|---------------------|---------------------|
| **Executing at the time of preparation of said tax return using said electronic tax preparation system an agreement related to said spending vehicle in which said taxpayer agrees to assign . . . and said third party spending vehicle provider agrees to accept** <br> *Claim 1* | Ordinary meaning. Alternatively, executing at the time of preparation of the tax return using the electronic tax preparation system an agreement related to the spending vehicles, that includes the taxpayer agreeing to assign the sponsors of the spending vehicle agreeing to accept | Requires that the parties enter into a **binding** agreement concurrently with the preparation of the tax return, using the electronic system specifically configured to prepare tax returns |
| **Accept an associated risk for non-payment** <br> *Claim 1* | Ordinary meaning. Alternatively, take a corresponding gamble for non-payment | The spending vehicle provider is obligated to provide the spending vehicle to the assignor of the right to receive a payment due regardless of whether the tax refund is paid, thus accepting a corresponding risk for non-payment in accepting the assignment. |

Plaintiff argues that there is no support in the specification for Defendant's proposal that the executed agreement be binding. Plaintiff contends an agreement may have conditions such that the parties are not necessarily bound to assign rights or issue vehicles. Plaintiff also argues that Defendant's proposal regarding an associated risk improperly creates an extra requirement that the third party is obligated to provide a spending vehicle whether a refund is paid or not. Defendant counters that the plain language of the claim requires a bilateral contract that formally binds the taxpayer and the spending vehicle provider. Defendant notes that during prosecution the patentee distinguished the invention from the prior art on the basis that in the prior art the risk of non-payment remained with the taxpayer. Plaintiff contends that accepting a risk of non-payment does not equal an obligation to supply a spending vehicle.

The specification does not describe an embodiment where the risk of non-payment resides with the spending vehicle provider. In some embodiments, a spending vehicle is only provided after a tax refund amount has been received by a spending vehicle provider. *See* '829 Patent col. 2:53-56 ("the tax refund is electronically deposited in a bank . . . . The spending vehicle is [then] provided to the taxpayer by the third party"). In other embodiments, a spending vehicle is immediately provided but not activated until the spending vehicle provider receives the refund amount. *See* '829 Patent col. 3:46-55 ("the spending vehicle provider may issue . . . a debit card to a taxpayer . . . . The credit card or debit card may not be activated until such time as the spending vehicle provider receives the tax refund deposit amount"); *see also* '829 Patent col. 4:48-49; 5:13. The claims, however, are not limited to the specific embodiments disclosed in the specification. *Comark Communications, Inc.*, 156 F.3d at 1187. Claim 1 describes an agreement that obligates a spending vehicle provider to "accept said assignment," "provide said selected spending vehicle to said taxpayer" and "accept an associated risk for non-payment of said portion of said income tax refund." '829 Patent col. 6:11-15. These "obligations occur upon submission of said tax return to said taxing authority." '829 Patent col. 6:18-19. Thus, the agreement itself obligates the

spending vehicle provider to provide a spending vehicle, but it does not exclude the possibility of this obligation being dependent upon some conditions.

The prosecution history may help provide context for determining the proper scope of the claim. *See Home Diagnostics*, 381 F.3d at 1356. During prosecution, the patentee distinguished the present invention from the Longfield prior art. Longfield taught refund anticipation loans secured by a taxpayer's refund amount. Mar. 21 2005 Amendment at 8. Longfield was attractive because it enabled the issuance of a loan or credit card within one or two days of completing a loan application, but the taxpayer was liable for the full amount of the loan regardless of the actual refund amount received. *Id.* at 9. The patentee explained that the present invention shifted the liability for non-payment to the spending vehicle providers. *Id.* at 10. "Spending vehicle providers that are concerned about liability may wait to receive the tax refund or confirmation of the tax refund amount prior to issuing the spending vehicle." *Id.*

After another rejection, the patentee "amended independent claim [1] to indicate more clearly that the assignment of a portion of the tax refund accepted by the spending vehicle provider in exchange for the spending vehicle comprises a risk for non-payment that is also accepted by the spending vehicle provider." Aug. 25 2005 Amendment at 6. At this time the phrase "an associated risk for non-payment of said portion of said income tax refund" first appeared. *Id.* at 4. The patentee explained that the invention "comprises an assignment in which the transfer is complete and absolute and leaves the assigning party (the taxpayer) with no interest in the property or right transferred (the tax refund). The taxpayer transfers to the spending vehicle provider the right to receive the tax refund and the spending vehicle provider accepts the transfer of the right and the associated risk of non-payment." *Id.* at 7. "If the refund amount is reduced or never paid, it is the spending vehicle provider that accepts the risk." *Id.* at 8. The "associated risk" language was removed in the tax amendment, *see* Dec. 30 2005 Amendment at 4-5, but the patentee continued to explain that "[t]axpayers are not required to take out a loan and remain

liable for repayment of the loan." *Id.* at 10.

In the final amendment, the patentee reintroduced the "associated risk" language, *see* Aug. 31 2006 Amendment at 3-5, and explained that "the assignee accepts the risks of non-payment which are separate and different from the credit teachings of Longfield which require the taxpayer to remain liable on a loan or credit card." *Id.* at 10-11. Although "an assignee may wait to issue a spending vehicle until after assurance of the accuracy of the tax refund is received from the tax authority which is also contrary to the teachings of Longfield," the patentee explained he amended claim 1 to indicate "that the obligations of the taxpayer and the spending vehicle provider occur upon submission of the tax return to a taxing authority." *Id.* at 11.

The Court finds that a spending vehicle provider can only accept an associated risk of non-payment by issuing a spending vehicle prior to the transfer of the tax refund amount. Although the specification and the earlier amendments disclose embodiments where the spending vehicle provider limits risk by waiting to receive the tax refund amount before issuing the spending vehicle, the present claim does not cover such embodiments. In the final amendment, the patentee stated that, although the risk of non-payment shifted to the spending vehicle provider, the provider could wait to issue the vehicle until after assurance of the accuracy of the tax refund. The patentee no longer described an embodiment in which the provider might wait until the tax refund amount is received, because the invention requires issuing a spending vehicle before receipt of the refund and thereby accepting the risk of nonpayment. The agreement itself obligates the spending vehicle provider to provide a spending vehicle, but it does not exclude the possibility of this obligation being dependent upon some conditions. Nonetheless, a spending vehicle provider does not accept the risk of non-payment unless the spending vehicle is provided before the transfer of the tax refund amount.

Having determined the scope of the claim terms, the Court must now determine how best to

communicate them to a lay jury. The Court finds that the terms are readily understandable for a jury and thus no construction is necessary. *See O2 Micro Int'l*, 521 F.3d at 1362; *Fenner Inv.*, 2008 WL 3981838 at *3. Although the Court will not construe the terms, the parties may not interpret the terms in a manner that is inconsistent with this opinion.

## VI. "An account for said third party spending vehicle provider"

| Claim | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| **An account for said third party spending vehicle provider** <br> *Claim 1* | Ordinary meaning using above definitions. Alternatively, an account for said third party spending vehicle provider | Must be an account owned by the third party entity in the third party's name. |

Plaintiff explains that, unlike Defendant's construction, the claim language does not indicate who owns the account. Plaintiff argues that Defendant's construction conflicts with the plain language of the specification. Plaintiff further argues that because the taxpayer receives a spending vehicle with a prepaid value associated with the refund, the taxpayer must also own the account that receives the refund. Defendant responds that the account must be owned by the third party spending vehicle provider to effectuate the assignment of the tax refund.

The Court finds that the specification does not require that the spending vehicle provider own the deposit account. In one embodiment, the tax refund is transferred to an account owned by the taxpayer. *See* '829 Patent col. 3:23-25 ("the IRS may send the refund amount 218 to the *taxpayer's account* at a financial institution 220 designated by the taxpayer 206 . . ." (emphasis added)). In another embodiment, the taxpayer identifies the deposit account but does not necessarily own the account. *See* '829 Patent col. 2:53-55 ("the tax refund is electronically deposited into a bank account identified by the taxpayer 112"). Although the spending vehicle provider may directly receive the tax refund in some embodiments, *see* '829 Patent Fig. 3 (showing transfer of refund 218 directly to third party / spending vehicle provider 200), the specification does not require a direct transfer in every embodiment. *See* '829 Patent col. 4:33-38

("[because] the IRS may send tax refund amount to a bank account established by or for the taxpayer, a spending vehicle provider may find it advantageous to work through that financial account rather than attempt to receive the tax refund amount through other avenues"). Thus, the Court rejects Defendant's proposal.

Having resolved the parties' claim scope dispute, the Court must now determine how best to communicate the term to a lay jury. The Court finds that the language of the term is readily understandable for a jury and thus no construction is necessary. *See O2 Micro Int'l*, 521 F.3d at 1362; *Fenner Inv.*, 2008 WL 3981838 at *3. Although the Court will not construe the terms, the parties may not interpret the terms in a manner that is inconsistent with this opinion.

**VII. "Said selected spending vehicle having a prepaid value greater than said assigned at least a portion of said tax refund"**

| Claim | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| **Said selected spending vehicle having a prepaid value greater than said assigned at least a portion of said tax refund** *Claim 1* | Ordinary meaning using above definitions. Alternatively, the selected spending vehicle has a prepaid value greater than the assigned portion of the tax refund | The face value of the spending vehicle must be greater than the amount assigned to the third party. |

Plaintiff argues that Defendant's proposal contradicts the specification by requiring the face value of the spending vehicle, rather than the spending power, to exceed the value of the assigned refund. Plaintiff contends that Defendant's proposal attempts to read in a limitation that does not appear in the claim or any other part of the specification. Defendant argues that the specification requires the spending vehicle have a specific prepaid value or dollar amount that must exceed the value of the assigned refund.

The specification does not address whether the face value of the spending vehicle must exceed the value of the assigned refund. The specification alternatively refers to the value of the spending vehicle as "buying power," *see* '829 Patent col. 1:53, 59; 2:45, 57; 3:64, "spending power," *see* '829 Patent col.

1:51; 3:58; 4:6, "financial value," *see* '829 Patent col. 3:27, or "dollar amount of value inherent in [the] spending vehicle." *See* '829 Patent col. 4:50-51. Although the specification discloses examples involving dollar amounts, *see* '829 Patent col. 3:56-67 (describing exchanging a $450 refund for a $500 spending vehicle, a $2,500 refund for a $3,000 spending vehicle, and a $2,250 refund for a $3000 spending vehicle), the specification does not require the spending vehicle's face value reflect these sums. *See* '829 Patent col. 3:56-58 (describing exchange a $450 tax refund amount "for $500 of *spending power*" (emphasis added)). Similarly, although a spending vehicle must provide must provide "spending power in a particular dollar amount," '829 Patent col. 4:6, it is not necessary that the spending vehicle's face value equal this spending power. Therefore the Court rejects Defendant's proposal.

Having resolved the parties' claim scope dispute, the Court must now determine how best to communicate the term to a lay jury. The Court finds that the language of the term is readily understandable for a jury and thus no construction is necessary. *See O2 Micro Int'l*, 521 F.3d at 1362; *Fenner Inv.*, 2008 WL 3981838 at *3. Although the Court will not construe the terms, the parties may not interpret the terms in a manner that is inconsistent with this opinion.

## CONCLUSION

For the foregoing reasons, the Court interprets the claim language in this case in the manner set forth above. For ease of reference, the Court's claim construction interpretations are set forth in a table attached to this opinion as Appendix A.

**So ORDERED and SIGNED this 8th day of December, 2009.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

| Claim | Plaintiff's Proposal | Defendant's Proposal | Court's Construction |
|---|---|---|---|
| **spending vehicle**<br>*Claim 1* | A financial product with value for spending, including a credit card, a debit card, a cash card, a checking card, a spending account, a checking account, an e-wallet account, electronic spending account, a gift card, a discount card, discount certificate, a rebate, a coupon, or a voucher, but not cash. | Anything of value to the payee which the payee agrees to accept ... instead of receiving a regular payment by check or cash or direct deposit. Anything that may be of value to a payee that the payee agrees to accept in place of a "regular payment," including without limitation, a credit card, a debit card, a cash card, a checking card, a spending account, a checking account, an e-wallet account, an electronic spending account, a gift card, a discount card, a discount certificate, a rebate, a coupon, a voucher, an electronic account, and any vehicle in which a taxpayer receives spending power in a particular dollar amount. Moreover, a "spending vehicle" may: include cash or check from a third party (including a government entity), but not cash or check in the form of a regular or periodic payment from the government entity; and be in | A financial product, but not cash, used for purchasing something of value |

| | | any form including electronic accounts, paper accounts, and physical cards. | |
|---|---|---|---|
| **assign / assignment**<br>*Claim 1* | Ordinary meaning. Alternatively, the transfer of a right or interest | The present unconditional, legal transfer of the right to receive at least a portion of a payment that gives the transferee the right to receive such portion of the payment that the transferor was entitled to receive prior to the transfer. The assignment is not conditional upon any further performance or non-performance by the transferor or any third party. | No construction |
| **Third party spending vehicle provider**<br>*Claim 1* | Sponsor of the spending vehicle that may include any entity besides the government issuing the payment or the individual receiving the payment | Any third party entity, including a government entity that offers a spending vehicle, directly or indirectly, to an individual in exchange for the assignment of a right to receive a payment. | A sponsor of a spending vehicle |
| **Redeemable only at a retailer designated by the arrangement**<br>*Claim 1* | Ordinary meaning. Alternatively, conditionally recoverable only at a designated merchant | The spending vehicle is redeemable only at a retailer designated by the arrangement between an electronic tax preparation system and a third party – and at no other entities. | No construction |
| **Executing at the time of preparation of said tax return using said electronic tax** | Ordinary meaning. Alternatively, executing at the time of preparation of the tax | Requires that the parties enter into a **binding** agreement concurrently with the | No construction |

| | | | |
|---|---|---|---|
| **preparation system an agreement related to said spending vehicle in which said taxpayer agrees to assign . . . and said third party spending vehicle provider agrees to accept**<br>*Claim 1* | return using the electronic tax preparation system an agreement related to the spending vehicles, that includes the taxpayer agreeing to assign the sponsors of the spending vehicle agreeing to accept | preparation of the tax return, using the electronic system specifically configured to prepare tax returns | |
| **Accept an associated risk for non-payment**<br>*Claim 1* | Ordinary meaning. Alternatively, take a corresponding gamble for non-payment | The spending vehicle provider is obligated to provide the spending vehicle to the assignor of the right to receive a payment due regardless of whether the tax refund is paid, thus accepting a corresponding risk for non-payment in accepting the assignment. | No construction |
| **An account for said third party spending vehicle provider**<br>*Claim 1* | Ordinary meaning using above definitions. Alternatively, an account for said third party spending vehicle provider | Must be an account owned by the third party entity in the third party's name. | No construction |
| **Said selected spending vehicle having a prepaid value greater than said assigned at least a portion of said tax refund**<br>*Claim 1* | Ordinary meaning using above definitions. Alternatively, the selected spending vehicle has a prepaid value greater than the assigned portion of the tax refund | The face value of the spending vehicle must be greater than the amount assigned to the third party. | No construction |